IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

GEORGE WILLIAMS, JR.                                    CV. 08-1476-MA

              Petitioner,                          OPINION AND ORDER

    v.

J.E. THOMAS,

              Respondent.

KENDRA M. MATTHEWS
RANSOM BLACKMAN LLP
1001 S.W. Fifth Avenue, Suite 1400
Portland, Oregon 97204-1144

    Attorneys for Petitioner

DWIGHT C. HOLTON
United States Attorney
District of Oregon
KEVIN DANIELSON
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

    Attorneys for Respondent

MARSH, Judge

    Petitioner, George Williams, Jr., an inmate in the custody of

the Federal Bureau of Prisons (BOP), brings this habeas corpus

1 - OPINION AND ORDER

proceeding pursuant to 28 U.S.C. § 2241.    In the instant
proceeding, petitioner alleges that he has been denied his right to
due process under the Fourteenth Amendment when the BOP disallowed
good conduct time (GCT) credits on several occasions.[1]    For the
reasons set forth below, petitioner's habeas corpus petition is
denied and this proceeding is dismissed.

<u>BACKGROUND</u>

In January of 2007, petitioner pleaded guilty to Felon in
Possession of a Firearm.    In October of 2007, he was sentenced to
120 months imprisonment to be followed by five years of supervised
release and was sent from FDC SeaTac to FCI-Sheridan.    On July 14,
2010, petitioner was transferred to the federal prison in
Victorville, California, where he is presently serving his
sentence.

While in custody, petitioner has received numerous deductions
of GCT credits because of his actions.    In this action, petitioner
challenges the GCT deductions arising out of six incident reports,
resulting in a loss of 134 days.[2]    Had petitioner earned all the

---

[1]Petitioner alleged three grounds for relief in his habeas
petition.  (CR #2.)  This court previously dismissed grounds one
and two because they alleged claims not actionable in a habeas
proceeding.  (CR #6.)

[2]In his petition, petitioner contends that he has lost 244
days in GCT credits, however, petitioner has lost only 134 days,
as the BOP may not deduct GCT until it has accrued.  (Ogden Dec.
(CR #28) p. 5.)

GCT credits for which he was eligible, his earliest projected release date would have been December 9, 2014. As of the date of this opinion, the BOP lists petitioner's projected release date as May 10, 2015. By way of remedy, petitioner seeks to have the 134 days of GCT credits restored and the related incidents expunged from his record, resulting in an earlier projected release date.

**DISCUSSION**

**I.   Exhaustion.**

Section 2241 does not specifically require petitioners to exhaust their administrative remedies prior to filing a habeas corpus action. 28 U.S.C. § 2241; Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986). As a prudential matter, however, a court may require a federal prisoner to exhaust his administrative remedies prior to seeking review under § 2241. Laing v. Ashcroft, 370 F.3d 994, 997 (9th Cir. 2004). A court may waive the prudential exhaustion requirement where administrative remedies are inadequate or ineffective, futile, or pursuit of them would cause irreparable injury. Id. at 1000-01.

The BOP has established an administrative remedy process permitting an inmate to seek review of any aspect of his imprisonment. See 28 C.F.R. § 542.10 et seq.; Nigro v. Sullivan, 40 F.3d 990, 992 (9th Cir. 1994). This process requires an inmate to proceed through four levels of review: (1) an attempt at informal resolution with institutional staff; (2) a formal written

administrative remedy request to the Warden; (3) an appeal to the
BOP Regional Director; and (4) an appeal to the BOP General
Counsel.  28 C.F.R. §§ 542.13-542.15.

In this case, petitioner asserts that he took substantial
steps to exhaust his remedies, and it appears from the record
before me that petitioner appealed at least two of the incidents to
the Regional Director.  (Memorandum in Support (CR #32) p. 2.)
Respondent does not challenge the petition on exhaustion grounds
and it appears that further exhaustion at this point would be
futile.  Accordingly, exhaustion is excused in the circumstances of
this case.

**II.  Due Process.**

**A.  Standards.**

An inmate who faces the loss of a statutory-created liberty
interest such as good time credits is entitled to some due process
protections.  Wolff v. McDonnell, 418 U.S. 539, 563-66 (1974).  It
is well settled that due process in prison disciplinary hearings
requires prison officials to:  (1) provide advance written notice
of the disciplinary violation; (2) allow the charged inmate an
opportunity to call witnesses and present documentary evidence in
his defense when doing so "will not be unduly hazardous to
institutional safety or correctional goals"; and (3) to provide a
written statement by a factfinder as to the evidence relied upon
and the reason for disciplinary action.  Wolff, 418 U.S. at 563-66.

Substantive due process is satisfied in prison disciplinary procedure if there is "some evidence" of a disciplinary infraction. Superintendent v. Hill, 472 U.S. 445, 447 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence." Id. at 455-56. Rather, "the relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." Id. (emphasis added); Bostic v. Carlson, 884 F.2d 1267, 1270 (9th Cir. 1989).

**B.    Analysis.**

**1.    Incident Report Nos. 1633188, 1633242, and 1633234.**

Petitioner challenges his loss of good time credits relating to three separate incident reports pertaining to petitioner's conduct at FDC-SeaTac on August 16, 2007. The three incident reports arise out petitioner's suicide attempt by tying a jumpsuit around his neck. When responding officers entered the cell and removed the jumpsuit, petitioner became physically and verbally abusive, and kicked and head-butted the officers. (See Pet. Exs. B-D (CR #33).) Following a hearing on March 18, 2008, petitioner was sanctioned a loss of 27 days GCT for each incident report. (Id.)

According to petitioner, his due process rights were denied when the Discipline Hearing Officer (DHO) refused to permit him to

call a witness, R. Palmquist, Warden of FDC-SeaTac, to testify at the March 18, 2008 hearing. Petitioner asserts that he was assured by FDC-SeaTac officials that the incident reports "would disappear," or be expunged, if he came off of suicide watch. Petitioner argues that the DHO's determination not to call the warden as a witness is arbitrary and violates due process in light of his attempt to prove that the incidents had been informally resolved. Petitioner's argument is unconvincing.

Generally, an inmate is allowed to present witnesses at a disciplinary hearing when doing so will not threaten institutional safety or correctional goals. Ponte v. Real, 471 U.S. 491, 497 (1985); Zimmerlee v. Keeney, 831 F.2d 183, 187 (9th Cir. 1987), cert. denied, 487 U.S. 1207 (1988). Prison officials have the discretion to keep the hearing within reasonable limits and to deny requests for witnesses "that may create a risk of reprisal or undermine authority." Ponte, 471 U.S. at 496. When prison officials do not allow witnesses to testify, the decision must be adequately justified on the record in the disciplinary proceeding or later in court proceedings. Id. at 497; Willmes v. Daniels, 2008 WL 346103, *3 (D. Or. Feb. 5, 2008).

The DHO has adequately justified his determination not to call the warden as a witness. In this case, the DHO concluded that Mr. Palmquist's testimony was not relevant because "Inmate Williams does not indicate the prospective witness will state inmate

Williams did not commit the prohibited acts, and therefore will not be called upon." (Pet. Ex. B (CR #33) p. 2.) As the DHO concluded, the warden did not possess any evidence relevant to whether or not petitioner committed the acts in the three incident reports.

Petitioner's assertion that the warden's testimony is relevant to whether or not the incident was informally resolved misses the mark. At the March 18, 2008 hearing, the DHO was charged with assessing whether petitioner committed the acts in question and fashioning an appropriate sanction. Whether an informal resolution was reached between prison officials and petitioner may be relevant to *imposing* the sanction, but it does not bear on whether petitioner committed the acts in question.

Additionally, as the DHO indicated, the incidents had been turned over to the FBI for possible prosecution on August 22, 2007. (Pet. Ex. B (CR #33) p. 3.) Although petitioner now contends that an informal resolution was reached during the pending FBI investigation, given the seriousness of the charges, such an agreement appears unlikely. See 28 C.F.R. § 541.14 (determining that High Category offenses must be resolved by a DHO).

Moreover, petitioner has not demonstrated that such an informal resolution was actually reached. Petitioner relies on records from the special housing unit (SHU) where petitioner was housed following his suicide attempt. While those records do state

7 - OPINION AND ORDER

that "all pending sanctions expunged," the records do not identify which sanctions, or identify particular incident reports that were to be expunged.   Indeed, the SHU records do not state that an informal resolution or agreement had been reached on the incident reports in question.

Lastly, although petitioner does not specifically challenge the sufficiency of the evidence underlying these sanctions, I conclude that the evidence in the record readily justifies the sanctions imposed.   The DHO relied on eyewitness accounts from several reporting officers which indicated that petitioner had tied a jumpsuit around his neck, and that when officers responded, petitioner became combative, abusive, and that petitioner kicked, head-butted, scratched, and bit them while the officers were attempting to restrain him.   (Pet. Exs. B-D (CR #33).) Additionally, the DHO relied upon a report from a psychologist concerning petitioner's mental state, which indicated that petitioner did not suffer a from a "true mental illness or disorder." (Id. at Ex. B.)  The sanctions imposed for Incident Report Nos. 1633188, 1633242, and 1633234 are supported by sufficient evidence in the record and do not violate due process. Hill, 472 U.S. at 457.

   **2.   Incident Report Nos. 1706620 and 1706615.**

Petitioner alleges that he was sanctioned twice for the same incident when he refused to take a new cell mate on March 4, 2008.

Petitioner asserts that at hearing on April 4, 2008, he lost 13 days of GCT credits for refusing to take a cell mate in Incident Report No. 1706615. (Pet. Ex. G.) Petitioner argues that following a hearing on April 12, 2008, he was sanctioned with the loss of 60 days of commissary privileges in Incident Report No. 1706620 for refusing to take a cell mate on the same day. (Pet. Ex. F.) According to petitioner, sanctioning him twice for the same conduct violates due process and therefore, he should be credited 13 days of good conduct time.

I disagree that petitioner was sanctioned twice for the exact same conduct. In the DHO's report from the hearing on April 12, 2008 concerning Incident Report No. 1706620, the DHO relied upon the eyewitness testimony of Officer E. Duncan, who provided that he and another Special Housing Unit Staff member ordered petitioner to submit to hand restraints and that petitioner refused on March 4, 2008. (Pet. Ex. F.) The DHO also relied upon the memoranda of Officer M. Punzo and Dr. P. Le, a staff psychologist. I conclude that there is sufficient evidence in the report to justify the DHO's determination that petitioner refused and order from Officer Duncan.

In the DHO's report from the April 4, 2008 hearing on Incident Report No. 1706615, the DHO relied upon the eyewitness account of Officer Punzo, who provided that on March 4, 2008, he and officer Duncan ordered petitioner to submit to hand restraints and

petitioner refused.    The DHO also relied upon petitioner's statements made to an investigator in which petitioner admitted to the conduct. (Pet. Ex. G.)  Again, there is some evidence in the record to support the DHO's determination that petitioner refused an order from Officer Punzo.

Thus, a review of the evidence before me reveals that petitioner was ordered by two officers, Duncan and Ponzo, to submit to hand restraints, and that he refused to obey both officers. Each officer submitted an incident report.    Petitioner was sanctioned for refusing each officer.  Because the DHO's conclusion is not so lacking in evidentiary support as to violate due process, his habeas corpus petition concerning Incident Report Nos. 1706620 and 1706615 must be denied.  Hill, 472 U.S. at 457.

**3.    Incident Report Nos. 1720378, and 1720411.**

Petitioner challenges his loss of 54 GCT days relating to his conduct on April 10, 2008, when Senior Officer Specialist McDougall and Lieutenant Cape were injured by petitioner while responding to petitioner's attempted suicide.  On that day, petitioner fashioned a mattress cover into a noose and hanged himself in his cell. A body alarm was activated and numerous officers entered petitioner's cell, cut him free, and escorted petitioner to a dry cell, where petitioner was placed in four point restraints to prevent petitioner from further harming himself.  The incident also was captured on two videotapes.  At a hearing on September 5, 2008, the

DHO determined that petitioner assaulted Officer McDougall by striking him in the nose, and Lieutenant Cape, by fracturing his hand, and disallowed 27 days of GCT time for each incident.

In this proceeding, petitioner alleges that the videotapes of the incident directly and definitively contradict the DHO's conclusions, failing to meet the deferential "some evidence" standard. I disagree.

In his hearing report on Incident No. 1720378, the DHO detailed specific, and sufficient evidence relating to Officer McDougall. The DHO noted a report from McDougall in which McDougall stated after petitioner was cut down from the noose, petitioner threw his elbow behind his back and struck him in the nose. (Pet. Ex. H (CR #33) p. 3.) The DHO detailed information from Lt. Burns, which stated that when petitioner was being escorted to the dry cell, petitioner became combative and hit McDougall in the nose. Numerous other reports from officers assisting with the incident were detailed by the DHO. The DHO also considered a Staff Injury Assessment and Followup performed on McDougall on April 10, 2008, which detailed superficial scratches and a "superficial laceration contusion to nose" and recommended that McDougall follow up with his primary care physician. The DHO specifically indicated that he reviewed the videotape and concluded that he "could not determine where Senior Officer Specialist McDougall received his injury." Based on the weight of the

11 - OPINION AND ORDER

evidence, the DHO concluded that petitioner committed the act of Assaulting Any Person, namely Officer McDougall.

In his hearing report on Incident No. 1720411, the DHO detailed specific, and sufficient evidence relating to Lt. Cape. The DHO relied upon a report provided by Lt. Cape, in which he stated that after petitioner was freed from the noose, he resisted being restrained, turned, twisted and head butted staff.  Lt. Cape further provided that he received an injury to his right hand, and an X-ray revealed that it was fractured.  The DHO detailed reports from numerous other officers assisting with the incident. The DHO also considered the Staff Injury Assessment and Followup form which indicated a fracture to Lt. Cape's right hand.  The DHO specifically indicated that he reviewed the videotape and that he "could not determine where Lieutenant Cape received his injury." (Pet. Ex. J (CR #33) p. 6.)  Based on the weight of the evidence, the DHO concluded that petitioner assaulted Lt. Cape.

Petitioner argues that the videotapes are exculpatory, and that in the critical moments, the videotapes conclusively establish that petitioner did not "head butt" staff or throw elbows. Petitioner asserts that because the video does not depict petitioner assaulting either Officer McDougall or Lt. Cape, his due process rights have been violated and the sanctions should be vacated.

Having carefully reviewed the videotapes, I conclude that they are not exculpatory, and that the DHO did not arbitrarily refuse to consider them.  As the videotapes show, after petitioner is freed from the noose by Officer Ryan, Officer McDougall and Lt. Cape assisted with lowering petitioner to the ground, and placing petitioner in restraints.  Numerous officers can be seen assisting with this task.  However, there is not a clear view of Officer McDougall or Lt. Cape throughout the process.  While I agree that petitioner does not appear to be head-butting staff or throwing elbows, he was resistant and uncooperative while being moved from the noose to the ground.  To be sure, the videotapes do not definitively establish that petitioner did not assault Officer McDougall or Lt. Cape.  Contrary to petitioner's suggestion, the DHO expressly provides in his determination that he reviewed the videotape and assessed that it was inconclusive.[3]

Indeed, this court's task is not to weigh the evidence or assess credibility, but rather, determine whether there is *any* evidence that *could* support the DHO's conclusion.  See Hill, 472 U.S. at 455-56 (emphasis added).  As discussed above, the DHO's determination readily meets this standard.  Because the

---

[3]The videotapes presented by petitioner offer two views of the same incident, Exhibit M, from a stationary camera outside petitioner's cell, and Exhibit N, from a hand-held camera. (CR #34 & 35.) It is unclear whether the DHO was presented with both videotapes.  However, that fact is immaterial as neither Exhibit M or N offers conclusive, exculpatory evidence.

13 - OPINION AND ORDER

determination of the DHO is not so lacking in evidentiary support as to violate due process, petitioner's habeas corpus petition must be denied.  Id. at 457.

### CONCLUSION

Based on the foregoing, petitioner's petition for writ of habeas corpus (#2) is DENIED, and this proceeding is DISMISSED, with prejudice.

IT IS SO ORDERED.

DATED this __15 day of DECEMBER, 2010.


_/s/  Malcolm F. Marsh_____
Malcolm F. Marsh
United States District Judge